**Todd M. Friedman (216752)**
**Adrian R. Bacon (280332)**
**Matthew R. Snyder (350907)**
**Law Offices of Todd M. Friedman, P.C.**
**23586 Calabasas Rd., Suite 105**
**Calabasas, CA 91302**
**Phone: 323-306-4234**
**tfriedman@toddflaw.com**
**abacon@toddflaw.com**
**msnyder@toddflaw.com**
*Attorneys for Plaintiff and all others similarly situated*

**UNTIED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

BIANCA JOHNSTON,

Plaintiff,

v.

CAPITAL ONE FINANCIAL CORPORATION,

Defendant.

Case No. 2:26-cv-00457-MWF-PVC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: May 4, 2026
Time: 10:00 a.m.
Courtroom: 5A
Judge: Hon. Michael W. Fitzgerald

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. LEGAL STANDARD ........ 3

IV. ARGUMENT ........ 4

A. Defendant's removal of this case to federal court, only to assert that Article III standing is lacking, is entirely in bad faith and necessitates a remand to state court. ........ 4

B. Plaintiff's claims under Penal Code § 638.51 are adequately plead. ........ 6

1. A plain language analysis of § 638.51 demonstrates that CIPA applies to internet communications. ........ 6

2. The Tracking Tools do not collect the contents of a communication. ........ 9

3. There is no exception to § 638.51 for a party to a conversation. ........ 10

4. Applying CIPA to tracking software like the Tracking Tools does not create a conflict with the CCPA. ........ 12

5. The rule of lenity does not apply. ........ 13

C. Plaintiff's claims under Penal Code § 631 are plead in the alternative to her claims under Penal Code § 638.51 ........ 14

1. The Tracking Tools intercept communications while they are in transit because they immediately intercept communications in real time. ........ 15

2. Plaintiff sufficiently alleges that the Tracking Entities' conduct was intentional. ........ 15

3. Defendant aided the Tracking Entites in the above-described violations of Section 631. ........ 17

V. CONCLUSION ........ 18

# TABLE OF AUTHORITIES

**Cases**

*Ahringer v. LoanDepot, Inc.*,
715 F.Supp.3d 1274 (C.D. Cal. 2024) .......... 18

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Ayala v. Sixt Rent a Car, LLC*,
No. CV 19-1514, 2019 WL 2914063, at *2 (C.D. Cal. July 8, 2019) .......... 5, 6

*B.K. v. Desert Care Network*,
No. , 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) .......... 20

*Bell Atlantic Corp v. Twombly*,
550 U.S. 544 (2007) .......... 3

*Borden v. U.S.*,
593 U.S. 420, (2021) .......... 18

*Bradshaw v. Lowe's Companies, Inc.*,
No. 25cv0742, 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) .......... 10

*Cal. Emp. Stabilization Comm. v. Payne*
(1947) 31 Cal.2d 210 .......... 10

*Campbell v. Facebook Inc.*,
77 F.Supp.3d 836 (N.D. Cal. 2014) .......... 18

*Clark v. State Farm Mut. Auto. Ins. Co.*,
231 F.R.D. 405 (C.D. Cal. 2005) .......... 22

*Deivaprakash v. Conde Nast Digital*,
798 F.Supp.3d 1100 (N.D. Cal. 2025) .......... 11, 16

*Doe v. Call-On DOC, Inc.*,
No. 24CV2095, 2025 WL 1677632, at *12–15 (S.D. Cal. June 13, 2025) .......... 21

*Doe v. GoodRx Holdings, Inc.*,
No. 23-cv-00501, 2025 WL 2052302, at *8 (N.D. Cal. July 22, 2025) ........................ 19

*Doe v. United States*,
419 F.3d 1058 (9th Cir. 2005) ........................ 4

*Earth Island Institute v. United States Forest Service*,
87 F.4th 1054 (9th Cir. 2023) ........................ 3

*Esparza v. Kohl's*,
723 F.Supp.3d 934 (S.D. Cal. 2024) ........................ 18

*Fiol v. Doellstedt*,
50 Cal.App.4th 1318 (1996) ........................ 21

*Gabrielli v. Haleon US Inc.*,
No. 25-cv-02555, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) ........................ 12

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. 2023) ........................ 9

*Guzman v. Polaris Industries Inc.*,
49 F.4th 1308 (9th Cir. 2022) ........................ 5

*In re Facebook, Inc. Internet Tracking Litig.*,
953 F.3d 589 (9th Cir. 2020) ........................ 8

*In re Metal Pixel Tax Filing Cases*,
2025 WL 2243615 (N.D. Cal. Aug. 5, 2025) ........................ 12

*In re Vizio, Inc. Consumer Priv. Litig.,*
238 F.Supp.3d 1204 (C.D. Cal. 2017) ........................ 18

*In re Zynga Priv. Litig.*,
750 F.Supp.3d 1098 (9th Cir. 2014) ........................ 11

*India Price v. Carnival Corp.*,
712 F.Supp.3d 1347 (S.D. Cal. 2024) ........................ 18

*James v. Walt Disney Co.*,
701 F.Supp.3d 942 (N.D. Cal. 2023) ........................ 19, 20

*Kearney v. Salomon Smith Barney, Inc.*,
(2006) 39 Cal.4th 95 .......... 12

*Kishnani v. Royal Caribbean Cruises Ltd.*,
No. 25-cv-01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025) .......... 11

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 18

*Lamie v. U.S. Tr.*,
540 U.S. 526 (2004) .......... 7

*Lesh v. Cables News Network, Inc.*,
No. 24 Civ. 03132, 2025 WL 563358 (S.D.N.Y. Feb. 20, 2025) .......... 8, 10

*Lungren v. Deukmejian*
(1988) 45 Cal.3d 727 .......... 4

*M.H. v. Done Global Inc.*,
No. , 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025) .......... 21

*Meza v. Portfolio Recovery Assocs., LLC*
(2019) 6 Cal.5th 844 .......... 7

*Mirmalek v. Los Angeles Times Commc'ns LLC*,
No. 24-cv-01797, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......... 10, 11, 15

*Moeck v. Allsaints USA Ltd.*,
220 F.Supp.3d 910 (N.D. Ill. 2016) .......... 5, 7

*Nelson v. Reddit, Inc.*,
No. 25-cv-1470, 2026 WL 445627, at *5 (S.D. Cal. Feb. 17, 2026) .......... 14

*Penning v. MedicineNet, Inc.*,
No. , 2025 WL 2814586, at *1–2 (N.D. Cal. Oct. 3, 2025) .......... 6

*People v. Avery*
(2002) 27 Cal. 4th 49 .......... 16

*People v. Braden*
(2023) 14 Cal. 5th 791 .......... 16

*People v. Davies*,
No. F080824, 2022 WL 366859, at *10 (Cal. App. Feb. 8, 2022) ................................ 19

*People v. Jenkins*
(1995) 10 Cal.4th 234 ........................................................................................ 4

*People v. Williams*,
26 Cal.4th 779 (2001) ........................................................................................ 19

*Pioneers Memorial Healthcare Dist. v. Imperal Valley Healthcare Dist.*,
745 F.Supp.3d 1088 (S.D. Cal. 2024) ................................................................. 6

*Polo v. Innoventions Int'l, LLC*,
833 F.3d 1193 (9th Cir. 2016) ............................................................................ 5

*R.C. v. Sussex Publishers, LLC*,
No. 24-cv-02609, 2025 WL 948060, at *9 (Mar. 28, 2025) ........................................ 21

*Rodriguez v. Autotrader.com*,
762 FSupp.3d 921 (C.D. Cal. 2025) ................................................................... 14

*Smith v. LoanMe, Inc.*
(2021) 11 Cal.5th 183 ................................................................................ 14, 16

*Tailford v. Experian Info. Sols., Inc.*,
26 F.4th 1092 (9th Cir. 2022) ............................................................................. 4

*Tavernetti v. Superior Ct.*,
22 Cal.3d 187 (1978) ........................................................................................ 17

*U.S. v. Gomez*,
165 F.4th 1199, 1209 (9th Cir. 2026) ................................................................. 18

*Walker v. Kroger Co.*,
No. 22-cv-00261, 2022 WL 20208929, at *1 (N.D. Cal. June 21, 2022) .................... 4, 6

*Wilcox v. Birtwhistle*
(1999) 21 Cal.4th 973 ................................................................................. 4, 13

*Wright v. TrueCare Property Holdings, LLC*,
No. 25-cv-00786, 2025 WL 3248749 (S.D. Cal. Nov. 21, 2025) ................................... 8

*Zarif v. Hwareh.com, Inc.*,
No. 23-cv-0565, 2025 WL 486317 (S.D. Cal. Feb. 13, 2025) ........ 8

**Statutes**

28 U.S.C. § 1447(c) ........ 7
Cal. Civ. C. §§ 1798.100–125 ........ 15
Cal. Civ. C. §§ 1798.100–199 ........ 15
Cal. Penal C. § 629.51 ........ 8
Cal. Penal C. § 631 ........ 17, 20
Cal. Penal C. § 631(a) ........ 17, 20
Cal. Penal C. § 638.51(b)(5) ........ 13
Cal. Penal Code § 637.2(a) ........ 5

**Other Authorities**

Clopton & Lahav, *Fraudulent Removal*, 135 HARVARD L. REV. 87, 87–88 (2021) ........ 7
S.B. 690, 2025 S., Reg. Sess. (Cal. 2025) ........ 11

**Rules**

Fed R. Civ. P. 12(b)(6) ........ 4
Fed. R. Civ. P. 8 ........ 3
Fed. R. Civ. P. 9 ........ 21
Fed. R. Civ. P. 9(b) ........ 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

After removing this case from state court and affirmatively representing that the Court had subject matter jurisdiction over it, Defendant now seeks a dismissal of Plaintiff's claims on the basis that she does not have Article III standing. By doing so, Defendant has effectively conceded that this case belongs in state court. Plaintiff does not oppose a remand to state court, but questions why Defendant has wasted everyone's time—especially the Court's—by removing this case only to seek a jurisdictional dismissal. Defendant cannot, in good faith, represent to the Court that it has subject matter jurisdiction while simultaneously representing to the Court that it lacks subject matter jurisdiction. One representation must be false. Remand to state court is mandatory in these circumstances—the Court need not consider the merits of Defendant's other arguments.

Substantively, Defendant's Motion to Dismiss consists of a scattershot of arguments that are wholly unsupported by the plain language of the California Invasion of Privacy Act ("CIPA"). The tracking tools used by Defendant collect multiple different types of metadata, such as IP address and device identifiers, and then uses that data to track a user's browsing activity. Numerous courts have held that nothing more is required for software to qualify as a trap and trace device. Defendant used this software without Plaintiff's consent, and without the consent of the putative class members. That is plainly a violation of CIPA. The clarity of CIPA's plain language explains why nearly a dozen federal courts have adopted Plaintiff's interpretation of the law, <u>just in the last several months</u>. This deluge of case law in support of Plaintiff's interpretation led one federal judge recently to state that the case law "uniformly" supports the conclusion that tracking software like that at issue here is a trap and trace device. Defendant's Motion simply invites the Court to ignore CIPA's plain language and commit legal error. It should not do so. The Motion should be denied.[1]

---

[1] Defendant also attacks Plaintiff's claims under a different provision of CIPA for wiretapping. As discussed herein, those claims are plead in the alternative to Plaintiff's claims for use of a trap and trace device. To the extent the Court concludes that the tracking software is a trap and trace device, it can dismiss the wiretapping claims.

## II. STATEMENT OF FACTS

Defendant Capital One Financial Corporation ("Defendant") maintains and operates the online financial services website www.discover.com (the "Website"), which offers credit cards, banking, and payment processing services for sale to consumers across the United States. Pl.'s First Am. Compl. [ECF No. 11] ("FAC") at ¶ 5. Plaintiff Bianca Johnston is a resident and citizen of California. FAC ¶ 4. Plaintiff used Defendant's Website for its intended purpose of browsing credit card offers and to compare credit cards. FAC ¶ 4. Plaintiff accessed the Website using the same devices and the same browser she used to access TikTok, Reddit, Facebook, and Pinterest. FAC ¶ 4.

Defendant installed and used multiple tracking pixels on the Website (the "Tracking Tools"), including tracking software developed by TikTok, Facebook, Reddit, and Pinterest (the "Tracking Entities"). FAC ¶¶ 32, 39, 47, 83, 90, 92, 101, 117. Among these Tracking Tools is a tracking pixel created by TikTok and installed on the Website to track Website visitors' actions, behavior, and conversions (the "TikTok Pixel"). FAC ¶ 32. The Complaint pleads the TikTok Pixel in detail as one example of the Tracking Tools installed on the Website, while alleging that Defendant used multiple Tracking Tools developed by other Tracking Entities to collect and transmit user information through the Website. FAC ¶¶ 32, 39, 47, 83, 90, 92, 101, 117. The TikTok Pixel is "a snippet of code that begins to collect information the moment a user lands on the Website." FAC ¶ 37. The TikTok Pixel shares information when users take actions on the Website, based on events configured by Defendant, including viewing products, adding items to a cart, and making purchases. FAC ¶ 38.

The TikTok Pixel obtains information communicated between a user's web browser and Defendant's servers. FAC ¶¶ 40, 67–71. The information collected includes IP address, device information, browser information, cookies, metadata, button clicks, and other dialing, routing, addressing, and signaling information associated with a user's electronic communications with the Website. FAC ¶ 68. The Complaint alleges that the TikTok Pixel employs several processes to identify users of Defendant's Website, generally known as "fingerprinting." FAC ¶ 58. One process involves the use of third-party cookies associated with TikTok that are detected and re-loaded when a user accesses the Website. FAC ¶¶ 58–

65. Through this process, TikTok is able to link otherwise anonymous internet users to their personal TikTok accounts. FAC ¶ 64.

The Complaint further alleges that the TikTok Pixel collects metadata communicated through HTTP headers, including IP address, device user-agent strings, device make, device model, operating system type, browser type, and unique browser identifiers. FAC ¶¶ 67–71. The Complaint alleges that this metadata is compared to a database maintained by TikTok to identify users and track them across multiple webpages, and that these identification processes occur instantaneously upon connecting to the Website, before any privacy policy or cookie banner is presented to the user. FAC ¶¶ 73. After identifying a user, the TikTok Software is alleged to track the user's interactions on the Website, including the pages visited, buttons clicked, products selected and purchased, and advertisements clicked, and to catalog and store this information to maintain a record of the user's Website behavior. FAC ¶¶ 75–76.

The Complaint alleges that the information collected was transmitted to the Tracking Entities in conjunction with Plaintiff's browsing history, allowing the Tracking Entities to identify Plaintiff and associate her Website communications and activity with her. FAC at p. 2. As alleged, Plaintiff's personal information was shared with TikTok and other Tracking Entities as a result of Defendant's implementation of the Tracking Tools on the Website. FAC ¶ 4. Plaintiff alleges that Defendant did not obtain her express or implied consent for the Tracking Tools to collect, identify, and transmit her information to TikTok or other Tracking Entities and did not obtain a court order authorizing the installation or use of the Tracking Tools to capture communications between Plaintiff and the Website. FAC ¶¶ 138, 140, 151, 186.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 8 requires that a Plaintiff only plead facts sufficient to give the defendant "fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007). "Rule 8's pleading standard is 'liberal.'" *Earth Island Institute v. United States Forest Service*, 87 F.4th 1054, 1071 (9th Cir. 2023). "When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint—as well as any reasonable inferences drawn from them—as

true and must construe them in the light most favorable to the non-moving party." *Yoon v. Lululemon USA, Inc.*, 549 F.Supp.3d 1073, 1078 (C.D. Cal. 2021) (citing *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005)). A motion to dismiss under Rule 12(b)(6) should only be granted if the complaint does not "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

When interpreting a statute "the words of the statute are the starting point." *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 978. "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature. *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735. When the language of a statute is not clear and requires construction, courts "must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute." *People v. Jenkins* (1995) 10 Cal.4th 234, 246.

## IV. ARGUMENT

### A. Defendant's removal of this case to federal court, only to assert that Article III standing is lacking, is entirely in bad faith and necessitates a remand to state court.

"As the party seeking to invoke this Court's jurisdiction, [Defendant] bears 'the burden of establishing the facts necessary to support standing.'" *Walker v. Kroger Co.*, No. 22-cv-00261, 2022 WL 20208929, at *1 (N.D. Cal. June 21, 2022) (quoting *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022)). "[A] removed case in which the plaintiff lacks Article III standing must be remanded to state court." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). Jurisdictional dismissals are necessarily without prejudice. *Guzman v. Polaris Industries Inc.*, 49 F.4th 1308, 1314 (9th Cir. 2022). Plaintiff does not oppose a remand of this matter to state court.[2] Because jurisdiction is a threshold issue, the Court need not reach the remaining issues discussed in Defendant's Motion.

[2] Plaintiff explicitly does not concede that she has not been injured within the meaning of Cal. Penal Code § 637.2(a), and does not waive any such argument. She simply does not oppose the relief that Defendant is necessarily seeking by arguing that the Court lacks subject matter jurisdiction.

In *Ayala v. Sixt Rent a Car, LLC*, the court was faced with precisely this situation. No. CV 19-1514, 2019 WL 2914063, at *2 (C.D. Cal. July 8, 2019). The defendant removed the case on the basis that "the court 'ha[d] subject matter jurisdiction' over the case." *Id.* Thereafter, the defendant filed a motion to dismiss arguing that the case should be dismissed for "lack of subject matter jurisdiction," because the defendant argued the plaintiff lacked Article III standing. *Id.* The court ultimately remanded the case to state court stating, "defendant is trying to have it both ways by asserting, then immediately disavowing, federal jurisdiction, apparently in hopes of achieving outright dismissal, with prejudice, rather than the remand required by § 1447(c)." *Id.* (quoting *Moeck v. Allsaints USA Ltd.*, 220 F.Supp.3d 910, 914 (N.D. Ill. 2016)) (quotation modified).

This case is exactly like *Ayala*. Here, as in *Ayala*, Defendant removed the case, claiming that "the Court has jurisdiction over this action." *See* Def.'s Not. of Removal at p. 1 [ECF No. 1]. And as in *Ayala*, now Defendant seeks a dismissal of Plaintiff's claims on the basis that there is no subject matter jurisdiction because she lacks Article III standing. *See* Def.'s Mot. to Dismiss at p. ii, 8–9 [ECF No. 13] (stating that this Motion is made, in part, pursuant to Fed. R. Civ. P. 12(b)(1). Thus, just as in *Ayala*, "[D]efendant is trying to have it both ways by asserting, then immediately disavowing, federal jurisdiction." *Ayala*, 2019 WL 2914063, at *2. Just as in *Ayala*, the Court <u>must</u> remand the case to state court. *Id.*; *Walker*, 2022 WL 2020829, at *1–2; *Penning v. MedicineNet, Inc.*, No. , 2025 WL 2814586, at *1–2 (N.D. Cal. Oct. 3, 2025); *Pioneers Memorial Healthcare Dist. v. Imperal Valley Healthcare Dist.*, 745 F.Supp.3d 1088, 1104–05 (S.D. Cal. 2024). Importantly, the Court need not actually conduct an independent standing analysis—Defendant's argument that Plaintiff lacks Article III standing is alone sufficient for the Court to conclude that Defendant has not met its burden. *See Penning*, 2025 WL 2814586, at *1; *Walker*, 2022 WL 20208929, at *2.

At least one district court has concluded that this practice, which has been coined a "fraudulent removal," justifies the award of attorney's fees to a plaintiff's counsel under 28 U.S.C. § 1447(c). *See* Clopton & Lahav, *Fraudulent Removal*, 135 HARVARD L. REV. 87, 87–88 (2021); *Moeck*, 220 F.Supp.3d at 914–15. Stating that, "no court has afforded" a dismissal with prejudice "under similar circumstances," the Northern District of Illinois

concluded that the defendant "lacked an objectively reasonable basis for seeking removal." *Id.* Plaintiff requests that the Court order Defendant to pay her reasonable attorney's fees incurred in opposing the instant Motion, pursuant to 28 U.S.C. § 1447(c).

### B. Plaintiff's claims under Penal Code § 638.51 are adequately plead.

#### 1. A plain language analysis of § 638.51 demonstrates that CIPA applies to internet communications.

"When [courts] interpret a statute, [their] fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. [Courts] must first examine the statutory language, giving it a plain and commonsense meaning. [Courts] do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." *Meza v. Portfolio Recovery Assocs., LLC* (2019) 6 Cal.5th 844, 856 (quotation modified). "[W]hen the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

"Trap and trace device" means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication. Cal. Penal C. § 638.50. "Though § 638.52 refers to pen registers and trap and trace devices as physically attached to telephone lines, the definitions set forth under § 638.50 do not state any such requirement." *Moody v. C2 Educational Sys. Inc.*, 742 F.Supp.3d 1072, 1076 (C.D. Cal. 2024). The "expansive language" included in CIPA's definition of trap and trace devices indicates that the Legislature intended broader coverage than just to telephone lines. *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023). "Today, pen registers [and trap and trace devices] take the form of software," and under the plain language of the statute, all that is required is that it "records or decodes dialing, routing, addressing, or signaling information." *Id.*; *Lesh v. Cables News Network, Inc.*, No. 24 Civ. 03132, 2025 WL 563358, at *3 (S.D.N.Y. Feb. 20, 2025) (applying California law); *see*

*also In re Facebook, Inc. Internet Tracking Litig.*, 953 F.3d 589, 608 (9th Cir. 2020) ("Permitting an entity to engage in the unauthorized duplication and forwarding of unknowing users' information would render permissible the most common methods of intrusion . . .").

"[S]oftware that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" constitutes a trap and trace device under CIPA. *Zarif v. Hwareh.com, Inc.*, 789 F.Supp.3d 880, 898 (S.D. Cal. 2025); *Wright v. TrueCare Property Holdings, LLC*, No. 25-cv-00786, 2025 WL 3248749, at *4–5 (S.D. Cal. Nov. 21, 2025). The allegations are simple. The website Defendant operates is an "electronic or wire communication service."[3] Defendant by virtue thereof is a "provider" of "services."[4] Plaintiff and Putative Class Members are "users" of this "service."[5] And the Tracking Software are "trap and trace devices." Defendant (aka the "provider") failed to obtain "consent of the user of that service" prior to "install[ing] or us[ing]" the pixel (aka the "trap and trace device") on the website (aka the "electronic or wire communication service").

In *Moody*, the Central District of California was analyzing the exact same software at issue in this case. 742 F.Supp.3d at 1076. The defendant sought dismissal, in part, based on the argument that the TikTok pixel software was not a trap and trace device because it is embedded in a website and not attached to a telephone line. *Id.* The court, there, disagreed stating that tracking software embedded in a website constitutes a "process that

---

[3] These terms are defined by Cal. Penal C. § 629.51. The definition of electronic communication is particularly broad, and defined as follows: "any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." *Id.* at § 629.51(b). The data alleged by Plaintiff to have been intercepted and shared via the Pixel clearly involves "writings" "data" and "intelligence" "of **any** nature in whole or in part." The transmission of such data axiomatically by virtue of occurring through the Internet involved some or all of the following: "wire, radio, electromagnetic, photoelectric, or photo-optical system." Transmission of data through websites on the Internet has been held by many courts to qualify as an electronic or wire communication service. *See, e.g., Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1050 (S.D. Cal. 2023); *Moody v. C2 Educational Sys. Inc.*, 742 F.Supp.3d 1072, 1076 (C.D. Cal. 2024).

[4] Defendant cannot be both a "user" and a "provider." The user is using the services of the provider. Moreover, the provider cannot be the Tracking Entities, because they are not providing the "service" it is providing the trap and trace device – two different pieces of technology contemplated by the plain language.

[5] Obviously Class Members must be the users, because it is their data, and therefore their privacy which is being invaded secretly by the provider (Defendant) on its website (service) using the Pixel (trap and trace device).

record[s] or capture[s] certain information from a wire or electronic communication." *Id.* (quotation modified). Thus, the TikTok pixel qualifies as a trap and trace device prohibited under CIPA. *Id.*

This case is no different than *Moody*, as it involves the exact same software. Plaintiff alleges that Defendant utilizes the Tracking Tools, including the TikTok Pixel, to gather data on and identify website users. FAC ¶¶ 32–35, 39–41. As was the case in *Moody*, Plaintiff alleges that the Tracking Tools collect the IP address of the user's device, the user's device user-agent strings, the make and model of the user's device, the type of operating system the user's device utilizes, what browser the user is utilizing, and the unique browser ID for the user's web browser in an effort to fingerprint Plaintiff and identify her. FAC ¶¶ 40, 68, 84–87, 107, 123. Thus, just like in *Moody*, the Tracking Tools are processes that records or captures information from a wire or electronic communication within the meaning of CIPA, and is therefore a trap and trace device. *Moody*, 742 F.Supp.3d at 1076. Numerous other courts have come to the exact same conclusion. *See, e.g.*, *Rodriguez*, 762 F.Supp.3d at 929–30; *Lesh*, 2025 WL 563358, at *3; *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *3–4 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F.Supp.3d 924, 928 (N.D. Cal. 2024). Certainly, one court recently noted that the case law "uniformly" supports the conclusion that online tracking software like the TikTok pixel is a trap and trace device. *Bradshaw v. Lowe's Companies, Inc.*, No. 25cv0742, 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025) (collecting cases).

This should not be surprising given the broad language utilized by the Legislature in Penal Code § 638.50, and the Legislature's stated codified intention under § 630 to adopt technological application of CIPA to evolving times. Under the plain language of CIPA all that is required to be a trap and trace device is the Tracking Tools utilize a process to collect electronic impulses that identify the source of an electronic communication. The robust software utilized here, which collects electronic impulses sent from a website user's computer for the primary purpose of identifying that user, undoubtedly qualifies.

The subsequent history of CIPA also suggests that the Tracking Tools meet the definition of a trap and trace device. "[A] subsequent expression of the Legislature as to

the intent of the prior statute, although not binding on the court, may properly be used in determining the effect of a prior act." *Cal. Emp. Stabilization Comm. v. Payne* (1947) 31 Cal.2d 210, 213–214. Currently pending in the Legislature is Senate Bill 690, which would amend CIPA to exempt the "processing of personal information for a commercial business purpose," from civil liability. S.B. 690, 2025 S., Reg. Sess. (Cal. 2025). But if Defendant is correct that the Tracking Tools are not trap and trace devices, then why would the Legislature need to amend CIPA to exempt this software from coverage? The simple answer is that software like the Tracking Tools are trap and trace devices, as that term is currently defined by CIPA. If it was not, there would be no need for the Legislature to amend CIPA and narrow its coverage. The Tracking Tools are trap and trace devices under a plain language analysis and according to case law that is directly on point.

**2. The Tracking Tools do not collect the contents of a communication.**

Generally, "contents" in the context of a privacy statute means "a person's intended message to another (i.e., the 'essential part' of the communication, the 'meaning conveyed,' and the 'thing one intends to convey')," and "does not include record information" such as the name, address, and identity of the sender. *In re Zynga Priv. Litig.*, 750 F.Supp.3d 1098, 1106–07 (9th Cir. 2014). Courts have repeatedly held that IP addresses and other identifiers collected by the Tracking Tools are not "contents." *See, e.g.*, *Deivaprakash v. Conde Nast Digital*, 798 F.Supp.3d 1100, 1105 (N.D. Cal. 2025); *Mirmalek v. Los Angeles Tims Commc'ns LLC*, No. 24-cv-01797, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024); *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108 (9th Cir. 2014). Here, Plaintiff alleges that the Tracking Tools collects a user's IP address, device identifiers such as user-agent strings, make and model, operating system type, and unique browser ID and then use that information to link to other identifying information (such as emails). *See* FAC ¶¶ 40, 68, 84–87, 107, 123. These are not the contents of a communication.

Defendant's citation to *Kishnani v. Royal Caribbean Cruises Ltd.*, is inappropriate. No. 25-cv-01473, 2025 WL 1745726 (N.D. Cal. June 24, 2025). There, the Northern District of California held that "biographical information" obtained by scanning information inputted by a website visitor was the content of a communication, and not mere signaling, dialing, or routing information. *Id.* at *4. Certainly, the court went on to clarify

that the content of a communication is "information provided from Plaintiff to Defendant directly," rather than information captured by invasive tracking software. *Id.* at *5. No reference to biographical information appears anywhere in Plaintiff's First Amended Complaint. Nor does Plaintiff allege that the Tracking Tools "scan" the webpage for information inputted by the user. *Kishnani* is distinguishable. Moreover, numerous courts have held that even where a trap and trace device might <u>also</u> capture the contents of a communication it is still a trap and trace device. *See, e.g.*, *In re Metal Pixel Tax Filing Cases*, 2025 WL 2243615, at *5 (N.D. Cal. Aug. 5, 2025); *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *5; *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555, 2025 WL 2494368, at *12 (N.D. Cal. Aug. 29, 2025).

**3. There is no exception to § 638.51 for a party to a conversation.**

> "(a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
> …
> (5) If the consent of the user of that service has been obtained.

Cal. Penal Code § 638.51. "California privacy statute generally prohibits any person from [committing an applicably privacy violation] without the consent of **<u>all parties</u>** to the conversation," *Kearney v. Salomon Smith Barney, Inc.*, (2006) 39 Cal.4th 95, 99 (emphasis added) (holding that California is an all-party consent state and that CIPA requires consent of all parties to a protected communication). CIPA's all-party consent status is longstanding and not open to interpretation. Yet, Defendant asks this Court to revisit settled law.

The language of Penal Code § 638.51 is exceedingly clear: "Except as provided in subdivision (b), <u>a person</u> may not install or use … a trap and trace device without first obtaining a court order . . ." Cal. Penal C. § 638.51(a) (emphasis added). There is no dispute that a relevant court order was not obtained here, and so § 638.51(b) is implicated. Subsection b lists several exceptions to this broad prohibition, only one of which is relevant to this analysis (i.e., subsection 5). None of the exceptions state that a party to a

communication may use a trap and trace device. *See* Cal. Penal C. § 638.51(b). *Expressio unius est exclusio alterius*. In fact, the statute states the opposite — it requires "consent of the user of [Defendant's website]" i.e. consent of Plaintiff and the Putative Class. Cal. Penal C. § 638.51(b)(5).

Defendant nonetheless argues that an exception to § 638.51 exists for parties to a communication, despite such an exception appearing nowhere in the statute. *See* Def.'s Mot. 12–14. Holding as such would ignore that the statute <u>says the exact opposite in plain and unambiguous terms</u>. Defendant, by virtue of operating a website which provides "electronic or wire communication service" engages with "users" of that service (i.e., Class Members). To install a trap and trace device on said "service" (i.e., website), Defendant requires "consent" of the "users" of the "service." The statutory text is plain as day. CIPA requires consent of all parties pursuant to longstanding precedent. The analysis can and should end here. Defendant argues, based almost exclusively on policy considerations rather than the statute's plain language or legal authority, that a party exception to § 638.51 must exist or else caller ID would be illegal under CIPA. But it is the plain language of the statute that governs, not policy arguments. *Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 978.

Even still, Defendant's argument is simply a false analogy. The Tracking Tools do far more than simple caller ID—they collect not only Plaintiff's IP address (which, alone would perhaps be comparable to caller ID collecting someone's phone number), they also collect device and browser information, referral tracking, and URL tracking, by interacting with and pulling information from a user's own browser and device. Moreover, consumers understand that when they place a phone call to another telephone line, the owner of that line regardless of whether they use caller ID can request a copy of their phone bill and obtain a copy of the phone number that dialed them. There is implied consent for sharing one's phone number when placing calls. There is no risk that a deluge of lawsuits against telephone users based on caller ID invasions of privacy will pour from members of the public if this Court holds that the invidious secretive Tracking Tools is a trap and trace device. Unlike caller ID, there is no such implied consent here because the Tracking Tools are significantly more invasive, is not understood by members of the public, and extract

information and data that is not normally available absent this invasive technology being secretly planted on a website. Caller ID and Tracking Tools are simply not the same thing. Anybody who is even remotely familiar with the technology would agree. Courts have repeatedly refused to read a party exception into § 638.51. *See, e.g.*, *Rodriguez v. Autotrader.com*, 762 FSupp.3d 921, 930 (C.D. Cal. 2025); *Nelson v. Reddit, Inc.*, No. 25-cv-1470, 2026 WL 445627, at *5 (S.D. Cal. Feb. 17, 2026); *Bradshaw v. Lowe's Companies, Inc.*, No. 25CV0742, 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025).

Finally, California courts have consistently declined to create a party exception under CIPA where no such exception is enumerated in the statute. Undersigned counsel filed a writ and obtained a 9-0 Supreme Court order rejecting that position. *Smith v. LoanMe, Inc*. (2021) 11 Cal.5th 183. A thorough review of that order shows the same rejected statutory construction flaws in Defendant's brief were rejected by the Supreme Court in *LoanMe*. This Court should avoid giving oxygen to these erroneous arguments, lest we see déjà vu all over again. There is simply no basis in the statute, in the legislative history, or in the case law, for this Court to infer that a party is exempted from CIPA's regulation of trap and trace devices. Defendant's Motion invites reversible error at every level and should be denied.

**4. Applying CIPA to tracking software like the Tracking Tools does not create a conflict with the CCPA.**

Under the CCPA, "[w]herever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of this title, but in the event of a conflict between other laws and the provisions of this title, <u>the provisions of law that afford the greatest protection for the right of privacy for consumers shall control</u>." Cal. Civ. C. § 1798.175; *see also Mirmalek*, 2024 WL 5102709, at *5 ("CCPA does not preempt CIPA . . . CCPA and CIPA are complementary."). The analysis ends here. In the event the Court would like a substantive explanation for why these statutes do not conflict (which is irrelevant given the CCPA's mandate above), Plaintiff shall elaborate further.

The CCPA creates numerous rights <u>for consumers</u> with respect to the collection of their data on the internet. It does not create any rights <u>for businesses</u> with respect to their data collection practices. Defendant would seemingly have the Court believe that the

CCPA authorizes the collection of personal data, under whatever circumstances, so long as the business collecting that data protects the rights of consumers outlined in the CCPA. That is not an accurate description of the CCPA, which was designed to supplement consumer privacy protections, not limit them. The CCPA established four rights for consumers with respect to the collection of their personal data: (1) the right to know, (2) the right to delete, (3) the right to opt out, and (4) the right to non-discrimination. Cal. Civ. C. §§ 1798.100–125. But nowhere does the CCPA establish a business's right to collect consumer data, as Defendant seemingly suggests. *See* Cal. Civ. C. §§ 1798.100–199.

There is simply no reason that Defendant cannot comply with both the CCPA and CIPA; all it has to do is affirmatively obtain a consumer's consent before collecting their data with the Tracking Tools, while also providing that consumer the right to delete their data, opt out, and nondiscrimination. This is not onerous — a simple clear and conspicuous disclosure in advance of collecting such data could be provided just as easily as an advisory on a phone call that "all calls are monitored (§ 631) and recorded (§§ 632 and 632.7) for quality assurance." Defendant's argument is based on the incorrect assumption that the CCPA grants it a license to collect data. It does not. Any conflict is imagined, and Defendant's Motion should be denied.

**5. The rule of lenity does not apply.**

"[A]lthough true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." *People v. Avery* (2002) 27 Cal. 4th 49, 58. "In other words, 'the rule of lenity is a tie-breaking principle, of relevance when ' 'two reasonable interpretations of the same provision stand in relative equipoise ....' ' ' " *People v. Braden* (2023) 14 Cal. 5th 791, 824. A defendant in a case before the California Supreme Court argued recently by undersigned counsel invoked the rule of lenity to argue that any ambiguities should be interpreted in its favor. *See LoanMe*, 11 Cal.5th at 202. There, the California Supreme Court declined to apply the rule of lenity, stating "the legislative history, the purpose of the statute, general public policy concerns, and logic all favor the interpretation we adopt," and therefore CIPA was not so ambiguous as to justify applying the rule of lenity. *Id.* This is exactly the case here The Court can do far more than "guess"

what the Legislature intended—the plain language of the statute is as clear as can be. The parties' positions are not in "relative equipoise." Courts have repeatedly declined to apply the rule of lenity to CIPA's trap and trace provisions. *See, e.g.*, *Deivaprakash*, 798 F.Supp.3d at 1108–09; *Fregosa*, No. 25-cv-01094, 2025 WL 2886399, at *9 (N.D. Cal. Oct. 9, 2025). Defendant's Motion should be denied.

**C. Plaintiff's claims under Penal Code § 631 are plead in the alternative to her claims under Penal Code § 638.51.**

Penal Code § 631 covers "three distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal.3d 187, 192 (1978). Specifically prohibited are (1) "intentional wiretapping;" (2) "attempting to learn the contents or meaning of a communication in transit over a wire;" and (3) "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." Cal. Penal C. § 631(a). CIPA also imposes liability on anyone who "aids, agrees with, employs, or conspires with any person or persons" in violating the three clauses above. *Id.*

As the First Amended Complaint makes clear, Plaintiff's claims under Penal Code § 631 are plead only "to the extent the Tracking Tools do not legally qualify as Pen Registers or Trap and Trace Devices." FAC at p. 36. Plaintiff generally agrees with Defendant that a claim under § 631 cannot exist simultaneously with a claim under § 638.51. The key difference between these claims, as outlined in Defendant's Motion is the type of information collected—§ 638.51 covers the collection of addressing and routing information (i.e., non-contents), whereas § 631 covers the interception of the contents of communications. Thus, if the Court concludes based on the above, that the Tracking Tools do not collect the contents of communications, Plaintiff's claim under § 638.51 survives and her claim under § 631 does not. On the other hand, if the Court concludes that Plaintiff has alleged that the Tracking Tools collect the contents of communications, her claim under § 631 survives, and her claim under § 638.51 does not.[6]

---

[6] The irony of Defendant arguing that Plaintiff has alleged the Tracking Software collects the contents of communications while simultaneously arguing that she has not alleged the collection of contents of communications and decrying Plaintiff's alternate theories of liability as contradictory should not be lost on the Court. Defendant cannot have it both ways. Either the Tracking Tools do not collect the contents of communications and are therefore trap and trace devices, or they do collect the contents of communications and are therefore an illegal wiretap.

### 1. The Tracking Tools intercept communications while they are in transit because they immediately intercept communications in real time.

For purposes of CIPA a communication is intercepted in transit when it is "acquired during transmission, not while it is in electronic storage." *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Courts have held that "at the motion to dismiss stage, a plaintiff is not expected to prove or even know how and when its communications were captured." *Esparza v. Kohl's*, 723 F.Supp.3d 934, 943 (S.D. Cal. 2024); *see also In re Vizio, Inc. Consumer Priv. Litig.,* 238 F.Supp.3d 1204, 1228 (C.D. Cal. 2017) ("*Vizio*").

Plaintiff has clearly alleged that Tracking Entities intercepted her communications while they were in transit. *See* FAC ¶¶ 47, 48, 73, 146. The communications are therefore intercepted while they are in transit. *Campbell v. Facebook Inc.*, 77 F.Supp.3d 836, 848 (N.D. Cal. 2014) ("the [SAC's] allegation that a user's messages were intercepted in transit is to be taken as true" at the motion to dismiss stage); *see also India Price v. Carnival Corp.*, 712 F.Supp.3d 1347, 1359–60 (S.D. Cal. 2024); *Ahringer v. LoanDepot, Inc.,* 715 F.Supp.3d 1274, 1282 (C.D. Cal. 2024).

### 2. Plaintiff sufficiently alleges that the Tracking Entities' conduct was intentional.

"Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "A person acts purposefully when he 'consciously desires' a particular result." *Borden v. U.S.*, 593 U.S. 420, 426 (2021). In California, "[a] defendant need not have 'specific intent to cause injury or a subjective awareness of the risk that an injury might occur'" to have acted intentionally. *U.S. v. Gomez*, 165 F.4th 1199, 1209 (9th Cir. 2026) (quoting *People v. Williams*, 26 Cal.4th 779, 790 (2001)).

Penal Code § 631 applies to "[a]ny person who . . . willfully **and** without the consent of all parties to the communication ," engages in intentional wiretapping, attempts to learn the contents of a communication in transit, or uses information gained in violation of the statute. Cal. Penal Code § 631(a) (emphasis added). It only requires that a person intend to intercept communications, not have the specific intent to do so without a person's consent. *See James v. Walt Disney Co.*, 701 F.Supp.3d 942, 954 (N.D. Cal. 2023) ("there must have been intent . . . [to] intercept," but whether website users consented to that

interception is a question of fact); *see also People v. Davies*, No. F080824, 2022 WL 366859, at *10 (Cal. App. Feb. 8, 2022) (analogous language of Penal Code § 632 is a general intent crime that "requires no further mental state beyond willing commission of the act.").

There are a slew of allegations in the FAC from which the Court can reasonably infer that Tracking Entities intended to intercept the data at issue in this case. For example, "TikTok benefits . . by using data collected by the TikTok Pixel to improve their own products and services." FAC ¶ 45. And "Facebook independently benefits from the data collected through the Facebook Pixel by using the harvested data to sell targeted advertising services." FAC ¶ 91. Certainly, the entire purpose of the Tracking Tools is to enable the Tracking Entities to gather data on consumers for the purpose of targeted advertising—they axiomatically must have intended to capture this data or else the Tracking Tools would have no purpose. *See* FAC at p. 1. The Tracking Entities intended to capture the data at issue, nothing else is required. *See Doe v. GoodRx Holdings, Inc.*, No. 23-cv-00501, 2025 WL 2052302, at *8 (N.D. Cal. July 22, 2025). *James*, 701 F.Supp.3d at 954.

Defendant's cited authority to the contrary is easily distinguishable. In *B.K. v. Desert Care Network*, the plaintiff's complaint included numerous allegations mentioning the third party's "express desire not to receive health data from its business partners." No. , 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024). Thus, the court concluded the plaintiff's allegations "indicate that [the third party] either had no intention of receiving the data at issue or had some alternative *mens rea*." *Id.* Here, however, no such allegations appear in Plaintiff's FAC. While some of the Tracking Tools' user agreements generally require Defendant to comply with the law in using those tools, those agreements do not express the Tracking Entities' "express desire" not to receive the intercepted data for purposes of marketing. Again, that is the entire purpose of these Tools. Defendant's Motion should be denied.

**3. Defendant aided the Tracking Entites in the above-described violations of Section 631.**

Section 631 imposes liability on anyone who aids another in violating its three primary clauses. Cal. Penal C. § 631(a). "[I]f a third party listens in on a conversation between the participants (even if one participant consents to the presence of that third party), then the third party is liable under the second prong (and the participant is often liable under the fourth prong)." *Javier v. Assurance IQ, LLC*, 649 F.Supp.3d 891, 897–98 (N.D. Cal. 2023) (emphasis added). "Civil aider-and-abettor liability requires 'the person (a) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act **or** (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *R.C. v. Sussex Publishers, LLC*, No. 24-cv-02609, 2025 WL 948060, at *9 (Mar. 28, 2025) (quoting *Fiol v. Doellstedt*, 50 Cal.App.4th 1318, 1325–26 (1996)) (emphasis added).

Courts have repeatedly held that intentionally installing tracking software on a website is sufficient to establish aiding and abetting liability under CIPA. *See, e.g.*, *M.H. v. Done Global Inc.*, No. , 2025 WL 629613, at *2 (N.D. Cal. Feb. 26, 2025); *Doe v. Call-On DOC, Inc.*, No. 24CV2095, 2025 WL 1677632, at *12–15 (S.D. Cal. June 13, 2025); *R.C.*, 2025 WL 948060, at *8–9 (applying aider-and-abettor liability to Penal Code § 632 claim). Plaintiff alleges that Defendant "has installed on [its] Website software created by third-party social media companies," and that Defendant "aided, agreed with, conspired with, and employed the Tracking Entities to implement the Tracking Tools." *See* FAC ¶¶ 32, 173. In other words, the only reason the Tracking Entities were able to intercept anything at all is because Defendant installed their software on its website. That is "substantial assistance," such that Defendant is liable for aiding the Tracking Entities.

Defendant's argument that Plaintiff has not adequately plead that it aided and abetted the Tracking Entities is based entirely on the basis that he has not adequately plead Defendant's knowledge of the Tracking Entites' conduct. This argument is foreclosed by the Rules of Civil Procedure: "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added). Thus, the "ninth Circuit has interpreted these rules to mean that conclusory pleading is

sufficient," for mental states and knowledge. *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 406 (C.D. Cal. 2005) (collecting cases). Plaintiff has adequately alleged that Defendant knew what the Tracking Entities were doing. *See* FAC ¶¶ 50–54, 95–100, 113–116, 130–133. Defendant's argument is simply belied by the allegations in the FAC. Plaintiff's allegations are sufficient at this stage and Defendant's Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that Defendant's Motion be denied.

Dated: April 1, 2026

LAW OFFICES OF TODD M. FRIEDMAN, P.C.

By: /s/Matthew R. Snyder
Adrian R. Bacon
Todd M. Friedman
Matthew R. Snyder
Attorneys for Plaintiff

**PROOF OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years and not a party to the above-entitled cause. On April 1, 2026, I electronically filed with the Court through its CM/ECF program and served a true copy through the same program the following documents: Plaintiff's Opposition to Defendant's Motion to Dismiss on the interested parties in said case:

> [x] ELECTRONICALLY, Pursuant to the CM/ECF system, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an email notification of the filing to the parties and counsel of record listed above who are registered with the Court's CM/ECF system.

Executed on April 1, 2026, at White Oak, Pennsylvania.

[x] I hereby certify under the penalty of perjury that the foregoing is true and correct.

By: s/ Matthew R. Snyder
Matthew R. Snyder